## STATE v. CERAR.

No. 3777.   Decided May 31, 1922.   (207 Pac. 507.)

.1. CRIMINAL LAW—PERMITTING JURY TO SEPARATE IN CAPITAL CASE HELD DISCRETIONARY AND NOT ERROR. Under Comp. Laws 1917, § 9001, where there was no objection to the separation of the jury in a murder case, and no showing of prejudice, it was within the courts discretion, and not error, to permit them to separate.[1]

2. CRIMINAL LAW—CHARGE IN LANGUAGE OF REQUESTED INSTRUCTION ORDINARILY INVITED ERROR. A charge taken from an instruction requested by defendant would ordinarily, if erroneous, be regarded as invited error of which defendant could not complain.

3. CRIMINAL LAW—CHARGE CONSIDERED AS WHOLE. A charge must be considered as a whole in determining whether error was committed in giving a particular excerpt therefrom.

4. HOMICIDE—CHARGE ON INTOXICATION IN GENERAL LANGUAGE HELD NOT ERROR. Where the evidence of intoxication at the time a murder was committed was meager and unsatisfactory, and the jury would have been justified in finding that it was not of that character affording any excuse, an instruction on intoxication, though couched in general terms, was sufficient.[2]

5. HOMICIDE—FAILURE TO GIVE MORE SPECIFIC INSTRUCTION ON DELIBERATION AND PREMEDITATION NOT PREJUDICIAL. Where an instruction on deliberation and premeditation on a trial for murder, though somewhat general in terms, was sufficient, the failure to give a more specific instruction was not prejudicial.[3]

[1] People v. Callaghan, 4 Utah, 49, 6 Pac. 49.

[2] Distinguishing State v. Dewey, 41 Utah, 538, 127 Pac. 275; State v. Anselmo, 46 Utah, 137, 148 Pac. 1071.

[3] State v. Anselmo, 46 Utah, 137, 148 Pac. 1071; People v, Callaghan, 4 Utah, 49, 6 Pac. 49.

6. CRIMINAL LAW—JURY MUST CONSIDER ALL THE EVIDENCE, AND NOT THAT OF GOOD CHARACTER ALONE. While evidence of good character may alone be sufficient to create a reasonable doubt, the jury should not consider such evidence by itself, and from that alone determine guilt or innocence, but in determining such question, which necessarily includes the question of reasonable doubt, should consider all the evidence submitted.[4]

7. CRIMINAL LAW—INSTRUCTION AS TO EVIDENCE OF GOOD CHARACTER NOT ERRONEOUS. An instruction that, if defendants good character for peace and quietness was proved to the satisfaction of the jury, such fact should be kept in view and be considered in connection with all the other facts, and that, if after a consideration of all the evidence, including that bearing on good character, the jury entertained a reasonable doubt of defendants guilt, it was their duty to acquit him, but that, if the evidence still convinced them beyond a reasonable doubt of defendant's guilt, it was their duty to find him guilty, was not erroneous.

8. CRIMINAL LAW—INSTRUCTION THAT JURY "CAN," INSTEAD OF "MUST," CONVICT OF LESSER DEGREE IN CASE OF DOUBT, NOT ERRONEOUS. An instruction that, if it appears that defendant has committed an offense, and there is a reasonable doubt of which of two or more degrees he is guilty, the jury "can" convict him of the lowest of such degrees only, is not erroneous or misleading because of the use of the word "can" instead of "must," used in Comp. Laws 1917, § 8979.

9. CRIMINAL LAW—REFUSAL OF INSTRUCTIONS COVERED BY CHARGE GIVEN NOT PREJUDICIAL. Where the substance of requested instructions was sufficiently covered by the court's charge, their refusal was not prejudicial error.

10. WITNESSES—CROSS-EXAMINATION AS TO CONTRIBUTIONS TO EXPENSES OF DEFENSE PROPERLY PERMITTED. It was not error to require witnesses for defendant to answer questions of the district attorney as to whether they had contributed money to defray the expenses incident to defendant's trial for the purpose of showing their interest.

11. WITNESSES—INTEREST IN CASE MAY ALWAYS BE SHOWN. The interest of a witness in any particular case in which he becomes a witness may always be shown.

---

[4] *State* v. *Brown*, 39 Utah, 159-176, 115 Pac. 1002-1008; *State* v. *Harris*, 58 Utah, 331, 199 Pac. 145.

12. CRIMINAL LAW—EFFECT OF INTEREST OF WITNESS IS FOR JURY. The effect, if any, of the interest of a witness on the weight of his testimony is always a question for the jury.

13. CRIMINAL LAW—TESTIMONY AS TO DEFENDANT'S MENTAL CONDITION AND APPEARANCE PROPERLY ADMITTED. On a trial for murder, a witness testifying on behalf of the state was properly permitted to testify concerning defendant's mental condition and appearance on the morning of the homicide.

14. CRIMINAL LAW—TESTIMONY AS TO SANITY BASED ON EXAMINATION DOES NOT REQUIRE DEFENDANT TO GIVE EVIDENCE AGAINST HIMSELF. Defendant was not compelled to give evidence against himself in violation of his constitutional right by admitting testimony of a doctor concerning his mental condition based on an examination made by him after the homicide and before the trial.

15. HOMICIDE—EVIDENCE HELD TO SUPPORT CONVICTION FOR MURDER IN FIRST DEGREE. Evidence *held* to make a question for the jury as to defendant's guilt of murder in the first degree, and to support its verdict finding him guilty.

16. HOMICIDE—WHETHER LIFE IMPRISONMENT SHOULD HAVE BEEN RECOMMENDED NOT REVIEWABLE. Whether the jury should have recommended life imprisonment in finding one guilty of murder in the first degree is a question which the Supreme Court has no power to determine.

Appeal from District Court, Seventh District, Carbon County; *F. E. Woods*, Judge.

John Cerar was convicted of murder in the first degree, and he appeals.

AFFIRMED.

*O. K. Clay* and *O. C. Dalby*, both of Price, for appellant.

*Harvey H. Cluff*, Atty. Gen., and *W. Hal Farr*, Asst. Atty. Gen., for the State.

FRICK, J.

The defendant, hereinafter called appellant, was convicted in the district court of Carbon county, Utah, of the crime of murder in the first degree, was sentenced to be executed, and appeals from the judgment.

The evidence relating to the acts constituting the alleged murder is singularly free from conflict and is quite brief. The evidence, in .substance, shows that appellant and one Masser, both Austrians, came to this country more than 30 years prior to the alleged murder. They first met in the state of New York, and from thence went to Cleveland, Ohio, and from thence came to Utah. At the time of the homicide, and for a number of years prior thereto, they were both employed in the coal mines of Carbon county. The evidence shows that during all of the years of their acquaintance they were friends and at the time of the alleged murder and for about 10 days prior to that time, they were boarding at the same house and slept with several others in the same room, but not in the same bed. On Sunday preceding the homicide the appellant and Masser attended a wedding of one of their countrymen at Sunnyside, Utah, where the mines in which they were employed are located. The evidence is also to the effect that the appellant in all probability drank intoxicating liquors during Sunday and Sunday night. It does not appear, however, how much he drank, nor whether he became intoxicated, and, if so, to what extent. The evidence is also quite unsatisfactory with respect to whether he or Masser slept any during Sunday night, but the inference therefrom is that they did not go to bed at all during that night. They were first seen together on Monday morning, March 7, 1921, the day of the homicide, in their boarding house by the woman with whom they were boarding (also an Austrian) at about 5 o'clock. They were then seated at or near the dining table in the dining room talking to each other. Some hours later, between 9 and 10 o'clock, they were seen a short distance from the boarding house by one Marshall, who had known both of them for several years. When Marshall saw them the appellant seemed to be angry and in bad humor, and they were talking in their own language in what ap-

peared to Marshall to be a somewhat angry mood. They remained outside of the house only a brief space of time, when both of them, Masser leading, went back into the boarding house. Just what occurred during the next few minutes is left to inference merely. The evidence of their landlady, however, is that Masser wanted to go out again, but that the appellant said that they better go to bed. They accordingly retired to their bedroom. In a very brief space of time thereafter the landlady says she heard some noise and heard the appellant say, "I guess you got enough; they can do with me what they please," and that immediately thereafter he opened the door, which was closed, and left the house. Immediately after appellant had made the foregoing statement and had left the house the landlady went into the bedroom and found Masser's trunk open and found him lying face downward on the open tray of his trunk, while appellant's trunk was also open, and a bloody axe was lying near the door on the floor. Masser was apparently unconscious, and the landlady, in attempting to lift him from the trunk, saw the blood streaming from his wounds and became excited and scared, and let him fall on his back on the floor of the bedroom and near the trunk. In entering the bedroom she had stepped on the axe, and, to prevent her small children from seeing or handling it she took it up at once and placed it under some furniture. She immediately called the witness Marshall aforesaid, who was only a short distance from the house, and he immediately came to the house and found Masser lying in the bedroom in the condition just stated. It was testified to that Masser had two wounds, one near the base of the brain about three or four inches in length and several inches deep and the other on top of his head practically of the same character. The doctor's testimony was to the effect that the wounds were fatal. Indeed, Masser never recovered consciousness after he was found in the condition before stated. The appellant, on leaving the boarding house, went directly to the office of the coal company, his employer, which was a half mile distant from the boarding house, and there in an excited manner stated to the chief clerk and to the

deputy sheriff that he had just struck his best friend Leo with an axe. Appellant was taken into custody by the deputy sheriff, and later in the day was by the sheriff, with whom he was quite well acquainted, taken to the county seat of Carbon county. He voluntarily told the sheriff what he had done, and, pointing to his breast, he said, "Something in here told me to do it." He also said that he and Masser had been gambling, and that he had lost all of his money by gambling with Masser, and that Masser did not want to play with him any further on the morning of and preceding the homicide. It appears in evidence that Masser had told him that the reason he did not want to play further was because the latter became angry when he lost, and Masser would rather not play with him. It also was made to appear that a short time before the homicide the appellant had received about $200 as payment for some household goods he had sold; that Masser had won all of that money; that appellant had borrowed a considerable sum of money from two friends which Masser had also won; and that during the preceding year Masser had won about $1,000 of appellant's money. It also appeared that at the office of the coal company appellant told the chief clerk to pay the amounts he had borrowed to the two persons from whom he had obtained the money borrowed. While on their way to the county seat a snowstorm overtook the sheriff and appellant, and the latter told the sheriff that snowstorms would not bother him any more thereafter, since "they" would "take care of me." The appellant at the trial testified in his own behalf, but, according to his statements, he did not have a distinct recollection of what had occurred on the morning of the homicide or how it occurred. Many other facts and circumstances he also seemed to have forgotten. There is also considerable evidence respecting appellant's conduct during the years preceding the homicide, his habits and those of his father and mother, that one of his brothers was in an insane asylum, and respecting appellant's mental condition. It is not necessary to now state that evidence in detail nor that with respect to his general reputation for peaceableness, etc. That evidence, so far as deemed ma-

terial, will be referred to in the course of the opinion in connection with the errors discussed.

Many errors are assigned by counsel for appellant. In considering them it is more convenient for us not to follow the order in which the errors are assigned, and we shall therefore not do so.

It is insisted that, in view that appellant was charged with and tried for a capital offense, the "district court abused its discretion, in allowing the jury to separate" during the trial. Comp. Laws Utah 1917, § 9001, so far as material here, provides:

"The jurors sworn to try a criminal action may, at any time before the submission of the case to the jury, in the discretion of the court, be permitted to separate or be kept in charge of a proper officer."

We have carefully examined the record and have found nothing from which it could be surmised, much less asserted, that the court's action in permitting the jury to separate was not thoroughly satisfactory to both the appellant and his counsel. Moreover, nothing is shown from which any one could infer that the appellant was in any way or to any extent prejudiced by the court's action in permitting the jury to separate. Had the appellant or his counsel objected to the separation of the jury, or if a request had been made to place the jury in charge of an officer and some misconduct on their part were made to appear, then the question of abuse of discretion might have arisen. Under the circumstances, however, as was held in *People* v. *Callaghan,* 4 Utah, 49, 6 Pac. 49, the matter of permitting the jury to separate during the trial and before the submission of the case was within the discretion of the court.

The district court therefore committed no error in permitting the jury to separate during the trial.

Appellant's counsel also urges that the court erred in charging the jury upon appellant's plea of insanity. The particular language excepted to is as follows:

"All that he [appellant] is required to do is to produce sufficient evidence of want of sanity, which evidence, when considered with

all the other evidence in the case, will create a reasonable doubt in the mind of the jury.  *  *  *"

The excerpt quoted is taken from appellant's request No. 1. The district court therefore merely adopted counsel's own language. That being so, the alleged error, if it **2, 3** were conceded to be such, would ordinarily come within the doctrine of "invited error," and the party offering the request would not be permitted to complain of the error. If, however, in view that this is a capital case, we should disregard the general rule, yet, when the charge is considered as a whole, as it must be, no error was committed.

It is further contended that the court's instruction on intoxication was erroneous in that it was not sufficiently specific in certain particulars, and further, that it did not conform to what is said upon that subject by this court in *State* v. *Dewey,* 41 Utah, 538, 127 Pac. 275, and *State* v. *Anselmo,* 46 Utah, 137, 148 Pac. 1071. In *State* v. *Dewey,* supra, the court's charge on the effect of intoxication in a criminal case was held to be narrower than the statute and for that reason was held erroneous. True, it was there also held that the charge on the effect of intoxication in capital cases should be explicit and in such language as to aid the jury in arriving at a correct conclusion upon the elements of premeditation and deliberation, which are always present in such cases. To the same effect is the case of *State* v. *Anselmo,* supra. A mere cursory reading of those cases, however, will disclose that they are exceptional and peculiar with respect to the facts and circumstances there involved. In the *Dewey* Case the intoxication of the accused was of such an extreme and protracted nature that it had developed into delirium tremens, while in the *Anselmo* Case the evidence was to the effect that the accused from childhood had been afflicted with epilepsy, and that his relatives and ancestors had been so afflicted, and that the use of intoxicating liquors had an unusual and extraordinary effect upon his mind. These cases are therefore clearly distinguishable from ordinary cases of intoxication. While we adhere to the rule laid down in the two cases just referred to, yet, where the evidence of intoxication is of that

meager and unsatisfactory character, which it is in this case, and where the jury would have been justified in finding that the intoxication of appellant, if under the influence of liquor at the time the alleged offense was committed was nevertheless, not of that character which would afford any excuse whatever, the case is quite different. We are of the opinion, therefore, that although the instruction upon the question of intoxication was couched in general terms merely, it was nevertheless, sufficient in view of all the facts and circumstances in this case, and that the jury were not misled. To reverse the judgment in this case upon the ground that the charge upon intoxication constituted prejudicial error would require us to assume prejudice where, in view of the whole record, none is made apparent. Indeed, it would be, in one view, a travesty of justice.

It is further insisted that the court erred in its charge on second degree murder. The court followed the statutory as well as the usual and generally adopted definition of second degree murder and we can discover no error in the charge upon that subject.

It is also contended that the court erred in its charge to the jury in which premeditation and deliberation, and especially premeditation, are defined. Here again counsel refers to and relies on what is said in *State* v. *Anselmo*, supra. While no doubt it would have been better if the district court had strictly followed the suggestions in the *Anselmo* Case, yet the mere fact that it did not does not necessarily constitute prejudicial error in every case. While the definition of premeditation which is excepted to is somewhat general in its terms, yet, in substance and effect, it is one that has often been used by the trial courts in murder cases. A definition of premeditation less specific than the one in question here was held sufficient in *People* v. *Callaghan*, 4 Utah, 49, 6 Pac. 49. Similar definitions are found in 2 Brickwood's Sackett, Instructions, §§ 3080, 3081. Here again, while we adhere to what was said in the *Anselmo* Case upon this subject, and are still of the opinion that it were better if the trial courts, in charging juries upon deliberation and

premeditation, followed the suggestions in that case, yet the instruction in the case at bar, although somewhat general in terms, nevertheless was sufficient and has frequently been held so by many of the courts of last resort. We are clearly of the opinion that, in view of the facts and circumstances of this case, appellant was not prejudiced in any substantial right.

It is also asserted that the court erred in its charge upon the question of good character. It is contended that the instruction is contrary to the rule laid down upon that subject in the case of *State* v. *Brown,* 39 Utah, 159-176, 115 Pac. 1002-1008, Ann. Cas. 1913E, 1, and in *State* v. *Harris,* 58 Utah, 331, 199 Pac. 145. The instruction excepted to reads as follows:

"The defendant introduced evidence tending to show his good character for peace and quietness. If in the present case the good character of the defendant for peace and quietness is proven to your satisfaction, then such fact should be kept in view by you in all your deliberations, and it is to be considered by you in connection with all the other facts in the case, *and if after a consideration of all the evidence in the case, including that bearing upon the good character of the defendant, the jury entertain a reasonable doubt as to the defendant's guilt, it is your duty to acquit him, but, if the evidence still convinces you beyond a reasonable doubt of the defendant's guilt, then it is your duty to find him guilty."*

It is insisted that that part of the instruction which we have italicized is clearly erroneous in that it practically destroyed the legal effect of the evidence of appellant's good character. In other words, counsel contends that the court in the instruction in effect told the jury that, if the evidence convinced them beyond a reasonable doubt of appellant's guilt, then they should disregard the effect of good character. It is insisted that the law in this jurisdiction is that, if the evidence of good character, standing alone, creates a reasonable doubt in the minds of the jurors, the accused is entitled to an acquittal at their hands, and that such is the effect of the decision in *State* v. *Brown,* supra. It is quite true, as stated in the *Brown* Case, that under certain circumstances evidence of good character may alone be sufficient to

create a reasonable doubt in the minds of the jurors so        **6, 7**
as to entitle the accused to a verdict of acquittal at
their hands.    That does, not mean, however, that in arriving
at the question of the guilt of the accused the jurors should
consider only the evidence of good character, and from that
alone determine his guilt or innocence.  If such were the law,
then one might commit the most atrocious murder, and, when
put on trial for the offense, might establish his previous good
character and ask that all the incriminating evidence should
be disregarded, and his guilt or innocence determined alone
from the evidence submitted upon the question of his good
character.    In determining the question of the guilt or in-
nocence of the accused, which necessarily includes the ques-
tion of reasonable doubt, the jurors must consider all the evi-
dence submitted to them and base their verdict upon all of
the evidence.  Such clearly is the effect of the *Brown* Case.
See 39 Utah, 160, where the writer states the rule which is
repeated by Mr. Justice McCarty at page 176.   It follows,
therefore, that the district court did not depart from the
rule stated in the majority opinion in the *Brown* Case and
hence committed no error in this regard.

It is next argued that the district court erred in instruct-
ing the jury upon the question respecting their right to
recommend imprisonment for life in their verdict.   There is
no merit in this contention, and it is not necessary to pursue
it.

It is also insisted that the court erred in instructing the
jury with respect to their duty to find the appellant guilty
of a lower degree in case they entertained a reasonable doubt
respecting his guilt of a higher degree.   Comp. Laws Utah
1917, § 8979, provides:

"When it shall appear that the defendant has committed a pub-
lic offense, and there is reasonable ground of doubt in which of two
or more degrees he is guilty, he must be convicted of the lowest of
such degrees only."

Upon that question the court charged the jury:

"If it should appear to you from the evidence beyond a reason-
able doubt that the defendant has committed an offense included
in the charge as explained in these instructions, and there is in

your minds a reasonable doubt of which of two or more degrees he is guilty, you *can* convict him of the lowest of such degrees only; and in- case of a conviction of murder in the first degree the jury has a right to recommend to the court that he be punished by life imprisonment, if they so desire." (Italics ours.)

The last clause of the foregoing instruction has already been considered as a part of another instruction.

It is somewhat vigorously contended that the court erred in using the word "can" instead of the term "must," which latter term is used in the statute. A mere cursory reading of the instruction excepted to will disclose that, if the district court had used the term "must," counsel in all. probability would be here complaining that the court had in effect directed the jury to find the appellant guilty of some degree, and in such event there would at least be some reason for the contention. By using the term "must" in the instruction referred to a very awkward expression would have resulted which might have been construed to mean that the jury was required to find appellant guilty of some lower degree. The instruction as it stands, in our judgment, clearly reflects the true intent and purpose of the statute, and any juror with sufficient intelligence to sit in any case could not have been misled by what the court said.

The refusal of appellant's requests to charge is also assigned as error. Counsel offered seven separate requests, and it is insisted that the court erred in refusing six of them. We have carefully examined all of the requests, and, while the court might well have given the request on good character, yet, as hereinbefore pointed out, that subject was sufficiently covered by the court's charge. Upon the other hand, at least two of the requests did not state the law correctly, while all of the others contained some expressions which were faulty. Moreover, the substance of the requests was sufficiently covered by the court's charge. After carefully considering all that was contained in the requests, and after comparing them with the court's charge, we are convinced that no prejudicial error resulted from the court's refusal to charge in the language of the requests. This assignment must therefore also fail.

It is also argued that the court erred in requiring two of appellant's witnesses to answer the questions of the district attorney as to whether they had not contributed some money to defray the expenses incident to the trial in this case. Both witnesses answered the questions in the affirmative, and counsel excepted. The court committed no error in that regard. The interest of a witness in any particular **10-12** case in which he becomes a witness may always be shown, and the effect, if any, of such interest upon the weight of the testimony, is always a question for the jury.

It is further contended that the court erred in permitting the witness Marshall, who testified on behalf of the state, to answer certain questions concerning appel- **13** lant's mental condition and appearance on the morning of the homicide. There is no merit in this contention.

It is next insisted that the district court erred in admitting in evidence the statements of Dr. Hyde, who testified on behalf of the state as an expert alienist, with respect to what he had learned from making an examination of appellant some months after the homicide and about six weeks before the trial. The statements of the doctor respecting appellant's mental condition were full, fair, and explicit in every particular. We hardly grasp the force of counsel's contention that in permitting the doctor to testify concerning appellant's mental condition, both past and present, some constitutional right was invaded because in stating the result of the doctor's examination appellant was compelled to give evidence against himself. It certainly would be strange doctrine to permit one charged with a public offense to put in issue his want of mental capacity to commit the offense, and in order to make his plea of want of capacity invulnerable prevent all inquiry into his mental state or condition. The **14** doctor frankly stated that in determining appellant's mental state at the time he is alleged to have committed the offense the doctor took into consideration only the facts stated in the hypothetical question. He, however, also said that appellant's physical and mental condition at the time the doctor made the examination were important and necessary

factors in determining whether appellant at the time of the alleged offense was committed was in truth and in fact afflicted with the peculiar mental infirmity claimed by his counsel and which had been testified to by the doctor who testified as a witness on behalf of the defendant. No one disputed the statements of the state's witness, the doctor aforesaid. We are clearly of the opinion that the court committed no error in admitting the doctor's statements in evidence.

Finally, it is contended that the evidence is insufficient to justify a finding of murder in the first degree. That question, while always within the exclusive province of the jury, in view of all the facts and circumstances, was peculiarly so in this case. From all that occurred between the appellant and the deceased as disclosed by the uncontradicted evidence, when viewed in the light of the surrounding circumstances, the jury were amply justified in finding the appellant guilty of first-degree murder. True, the writer would have been better satisfied if the jury had recommended life imprisonment in their verdict and that such would have been the court's sentence; yet that is not a question that this court has the power to determine. A careful review of the whole record convinces that the appellant had a full, fair, and impartial trial, that he was very ably defended, and that there is nothing in the record which authorizes us to interfere with the verdict or judgment.

The judgment therefore should be, and it accordingly is, affirmed.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.