The STATE of Utah, Plaintiff and Respondent,

v.

Harry MAESTAS, Defendant and Appellant.

No. 14585.

Supreme Court of Utah.

May 31, 1977.

---

1. *State v. Judd*, 27 Utah 2d 79, 81, 493 P.2d 604 (1972).

Larry R. Keller of Salt Lake Legal Defender Assn., Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

1. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934

**HALL, Justice:**

This is an appeal by defendant from a conviction of the offense of assault by a prisoner.

The incident involved arose in the maximum security facility of the Utah State Prison. The assault itself is not generally in dispute but the events leading up to the same are substantially in dispute. The victim, Michael William Hart, maintained at trial that he was struck several times in the face by defendant's fists and that the assault was in response to his request for payment of money owed him by defendant. Defendant maintained that he was "jumpy" because he believed someone was trying to harm him, he being concerned for his personal safety by reason of a prior incident that occurred in the kitchen, and by reason of the fact he had been stabbed before in prison. He further maintained while watching television with an earphone in one ear he heard a fellow prisoner call, "Watch Out!" as he was simultaneously struck on the shoulder with some commissary slips. He then whirled and struck the victim, Hart, instinctively in self-defense. He makes no effort to refute the evidence of the medical expert that the victim was struck a number of times as evidenced by the abrasions, bruises and lacerations observed on the victim as well as defendant's swollen hands.

Defendant here asserts the trial court committed error by (1) refusing to allow cross-examination of the victim concerning agreements with the prosecution in return for testimony, the same being a denial of due process, and (2) refusal to instruct the jury on his theory of the case, that of self-defense.

The right to cross-examine is an invaluable right embodied in Article I, Section 12 of the Utah Constitution and in the Sixth Amendment of the United States Constitution [1] which assures the right to confrontation.

(1965); *Evans v. State*, Alaska, 550 P.2d 830 (1976); *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931).

In *Davis v. Alaska,* footnote 1 above, the court described cross-examination as follows:

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony is tested. . . . We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.

 The trial court's obligation to control the trial to prevent prejudice and waste of time must of course be weighed against the competing right of confrontation and the limiting of cross-examination is within the sound discretion of the court.[2] The court is particularly careful to allow wide latitude in the areas of bias and motive for testifying.[3]

In *Hutchings v. State*[4] the court stated the fundamental importance of knowledge as to the motivation of a witness and the court in *Evans v. State,* footnote 1 above, found a special need for extensive cross-examination on bias when informers or others who hoped for police leniency were involved.

 This court has long recognized the particular significance of cross-examination and the fact that the interest of a witness is a matter which the jury must weigh against his credibility.[5] Should the trial court err in unduly limiting the cross-examination such may not be reversible error without a showing of prejudice.[6] In *State v. Chance*[7] the North Carolina court found no prejudicial error because the question itself implied the contention of counsel who asked the question.

In this case the following colloquy was engaged in by Hart and Larry Keller, appellant's counsel:

Mr. Keller: Isn't it true that you made up this story so you could get out of the maximum security unit of the Utah State Prison?

Mr. Hart: No Sir.

Mr. Keller: You have never told anyone that you wanted to get out of maximum security unit?

Mr. Hart: Sir, I have said I wanted to get out.

Mr. Keller: And you would do it any way you could?

Mr. Hart: No Sir.

Further cross-examination of Hart by appellant's counsel resulted in the following colloquy:

Mr. Keller: I see, you testified at the preliminary hearing in this matter that you knew, well before this incident on January 15th that you had better get out of maximum security didn't you?

Mr. Hart: No Sir.

Mr. Keller: You didn't?

Mr. Hart: No Sir.

Mr. Keller: But you were concerned about staying in maximum security at Utah State Prison?

Mr. Hart: No Sir, I was not.

Mr. Keller: Because of other incidents you were involved in?

Mr. Hart: No Sir.

Mr. Keller: In fact you wanted out of there Mr. Hart?

Mr. Hart: I would have liked to got out, yes.

Mr. Keller: Yes? You are not afraid to admit that you wanted out of maximum security?

Mr. Hart: Yes Sir.

Mr. Keller: And as a result of your testimony in this case the State has agreed to not send you back to the Utah State Prison, haven't they?

2. *State v. Anderson,* 27 Utah 2d 276, 495 P.2d 804 (1972); *State v. Fox,* 22 Utah 2d 211, 450 P.2d 987 (1969); *State v. Kinder,* 14 Utah 2d 199, 381 P.2d 82 (1963).

3. *State v. Curtis,* Utah, 542 P.2d 744 (1975); *State v. Ramos,* 108 Ariz. 36, 492 P.2d 697 (1972).

4. Alaska, 518 P.2d 767 (1974).

5. *State v. Cerar,* 60 Utah 208, 207 P. 507 (1922).

6. *State v. Smelser,* 23 Utah 2d 347, 463 P.2d 562 (1970).

7. 279 N.C. 643, 185 S.E.2d 227 (1971).

Mr. Stott: I'm going to object.

Court: Sustained.

Mr. Keller: Your Honor.

Court: Objection is sustained.

Mr. Keller: I would like to argue that point, Your Honor, may we do so outside the presence of the jury?

Court: Ask your next question.

Mr. Keller: May we at least approach the bench on it?

Court: Ask your next question counsel, please.

Mr. Keller: What other agreement did you make with the State of Utah for your testimony, Mr.—

Mr. Stott: I'm going to object to that, there isn't any evidence, he is assuming things.

Court: Objection is sustained.

Mr. Keller: Your Honor, we are entitled to know what agreements have been made with this man in return for his testimony against the defendant. There is a long line of case law that allows us to do that.

Court: Ask your next question counsel.

Sergeant Ken Miles of the Salt Lake County Sheriff's Office was cross-examined by appellant's counsel in regards to an interview that Sergeant Miles had with the victim Michael Hart. The following colloquy ensued:

Mr. Keller: . . . Well, after Mr. Hart talked with you did you indicate to him that you would take any steps to see that there were no repercussions from him making these allegations?

Sergeant Miles: I told him that the only choice I had was to present the case to the county attorney and in the event there is a criminal complaint issued then it is between the sheriff and the warden of the prison to make arrangements for his care.

Mr. Keller: He did demand of you certain conditions before he made a statement didn't he? Did he detective Miles?

Sergeant Miles: I would say no.

Mr. Keller: Didn't he tell you he wanted out of the Utah State Prison, he wanted to be transferred to another prison?

From the foregoing it is evident that not only did Mr. Keller's questions imply that there may have been an agreement between the state and the witness, but in addition thereto, the testimony of Sergeant Miles also addressed the same contention. While neither Hart nor other witnesses were actually asked whether any promise was given, the implication that one may have been was clearly before the jury.

Courts have found no prejudice where information that may be brought out by further questioning was already before the jury either from the testimony of others or by implication from the witness' own testimony.[8] In *People v. Winston*[9] the trial court refused to allow questions of witnesses involved in drugs as to offers of leniency for their testimony. Such was held to be error, but not *prejudicial* error since the jury was aware that the witnesses had broken the law and were under the supervision of juvenile authorities.

■ Here, the jury was aware of Hart's desire not to remain in maximum security at the Utah State Prison, was also aware of conversations with a law enforcement officer about his care, and was no doubt aware of his possible motivation for testifying as he did. Hence, while there may have been error in limiting the cross-examination as to bias or motive, such was not prejudicial error, nor does it appear that additional cross-examination would have further aided the jury in determining Hart's credibility.

■ Turning now to the second assignment of error, that of failure to instruct the jury on defendant's theory of self-defense, the law is well-settled that a defendant is entitled to have an instruction on his theory

8. *Rios v. Chand*, 130 Cal.App.2d 833, 280 P.2d 47 (1955); *People v. Chand*, 116 Cal.App.2d 242, 253 P.2d 499 (1953); *State v. Robinson*, 24 Wash.2d 909, 167 P.2d 986 (1946).

9. 46 Cal.2d 151, 293 P.2d 40 (1956).

if there is any substantial evidence to justify giving such an instruction.[10]

In *State v. Castillo*[11] this court observed:

If the defendant's evidence, although in material conflict with the State's proof, be such that the jury may entertain a reasonable doubt as to whether or not he acted in self-defense, he is entitled to have the jury instructed fully and clearly on the law of self-defense. Conversely, if all reasonable men must conclude that the evidence is so slight as to be incapable of raising a reasonable doubt in the jury's mind as to whether a defendant accused of a crime acted in self-defense, tendered instructions thereon are properly refused.

This court also observed in *State v. Talarico*,[12]

. . . While the theory of counsel persistently and strenuously urged, was that of self-defense, it was nevertheless all theory and no evidence, all shadow and no substance.

■ Defendant admits striking Hart saying such was "necessary" for the following reasons: (1) he was in prison and such made him more fearful of his personal safety than if in a normal environment; (2) that he had been stabbed before in prison; (3) that Hart came from behind striking him ever so slightly with some papers just as a fellow inmate sounded a warning. The State's evidence was substantially contrary, Hart claiming he approached defendant from the side, handed the papers to him, went on handing additional papers to two other inmates, and was looking for a wash bucket at which time he was struck. The medical evidence was that Hart sustained abrasions, lacerations and bruises indicative of several blows and that defendant's hands were swollen. Also, defendant had previously stated he had hit Hart because of a remark made causing him to lose his temper.

Based on the foregoing the trial court determined there was no substantive evidence to warrant a self-defense instruction and we agree.

The trial court instructed the jury that in order to convict the defendant they must find that he acted intentionally and knowingly and in doing so that they must consider the nature of his conduct, the circumstances surrounding it and its result. In addition, the jury was further instructed that to warrant a conviction the evidence must exclude from their minds every reasonable hypothesis other than guilt.

A careful examination of the record compels the conclusion that the result reached would not have been different had the jury been instructed on the theory of self-defense. As was stated in *State v. Talarico*, footnote 12 supra, the question of self-defense was all theory without substantive evidence to support it.

Affirmed.

ELLETT, C. J., and CROCKETT, J., concur.

WILKINS, Justice (dissenting):

I respectfully dissent. The District Court's refusal to allow defense counsel to cross-examine Witness Hart, a fellow inmate and alleged victim, concerning any agreements he may have made with the State in return for his testimony, was, in my opinion, prejudicial error. I suggest that a careful reading of these examinations, cited in the main opinion, of both Witnesses Hart and Miles (a Sergeant in Salt Lake County Sheriff's Office) shows that the constitutionally protected right of cross-examination[1] was denied, and the denial did not fall within any exceptions thereto such as the examinations being repetitious, unduly harassing, speculative or corroborative.

Nor did Sergeant Miles' answer of "I would say no" to defense counsel's question "He (Hart) did demand of you certain con-

---

10. *State v. Johnson*, 112 Utah 130, 185 P.2d 738 (1947); *State v. Mosley*, 75 N.M. 348, 404 P.2d 304 (1965).

11. 23 Utah 2d 70, 457 P.2d 618 (1969).

12. 57 Utah 229, 193 P. 860 (1920).

1. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *State v. Smelser*, 23 Utah 2d 347, 463 P.2d 562 (1970).

ditions before he made a statement, didn't he?", which are noted in the main opinion, constitute a basis for proper denial of cross-examination on the significant matter of probing the motivation for Witness Hart's testimony. Sergeant Miles said no "demand" was made by Hart, which does not meet the threshold of defendant's attempted line of inquiry of whether any *promises* had been made by the State to Hart for his testimony. Miles did not say "no promises were made". Even if Miles had testified that no promises or agreements were made, I believe the defendant should have been allowed to pursue this area with Hart, but the statement by Miles concerning "demands" does not even dovetail with the crucial matter of promises or agreements.

The cross-examination concerning motivation of Hart's testimony was thwarted unreasonably, causing an impermissible incursion into the precious right of confrontation,[2] and this matter should therefore be reversed and remanded for a new trial.

MAUGHAN, J., concurs in Justice WILKINS' dissent.

**2.** Art. 1, § 12, Constitution of Utah; Sixth Amendment, Constitution of the United States.