## STATE v. ZIMMERMAN.

No. 5104. Decided August 21, 1931. (1 Pac. [2d] 962.)

*J. R. Haas,* of Salt Lake City, for appellant.

*Geo. P. Parker,* Atty. Gen., and *L. A. Miner,* Dep. Atty. Gen., both of Salt Lake City, for the State.

ELIAS HANSEN, J.

The defendant was convicted of being a persistent violator of an act "Prohibiting the manufacture and use of intoxicat-

ing liquors, and regulating the sale and traffic therein." Comp. Laws 1917, § 3341 et seq., as amended. He was sentenced to serve an indeterminate term in the state prison and appeals.

He seeks a reversal of the judgment upon two grounds. His first assignment of error is founded upon one of the instructions which the trial court gave to the jury. A brief summary of the evidence received at the trial is necessary to understand the circumstances which prompted the giving of the instruction complained of. The state offered evidence which tends to establish these facts: On January 3, 1930, the defendant was convicted of knowingly having possession of intoxicating liquors. On March 14, 1930, three peace officers of Salt Lake City and two employees of the United States government went to defendant's residence in Salt Lake City, Utah, for the purpose of searching for intoxicating liquors. They had a search and seizure warrant. After the officers had searched various parts of defendant's premises, one of them informed the defendant that he desired to go into one of the bedrooms. The defendant stated that the other officers had seached that room, but when the officer insisted on going into the bedroom the defendant unlocked the door and permitted the officer to enter. During the search, the officer discovered that the threshold of the door in the bedroom was loose. Upon removing it, he found stored in a cache three bottles of whiskey and five one-pint bottles of gin.

The defendant was called as a witness in his own behalf. He testified that the building searched consisted of twenty-two rooms, and he was using it for conducting a rooming and boarding-house; that he had not used the bedroom where the liquor was found, except for a few days; that various persons had used the room; that a miner who also engaged in gambling had recently occupied the room. Defendant further testified that he did not know that the threshold of the bedroom was loose; that he did not know there was any

intoxicating liquors under the threshold; and that he was not in possession of the liquor.

The instruction complained of reads as follows:

"You are further instructed that if you find from the evidence that the said defendant Charles Zimmerman had no knowledge of the loosened threshold to the said room, under which the said cache of intoxicating liquor was found, and if you further find from the evidence that he had no knowledge or information as to said intoxicating liquor being stored thereunder, and if you further find from the evidence that the said intoxicating liquor was not in the possession of the said defendant, then and in such event it would be your duty to find the defendant not guilty."

Counsel for defendant objected and excepted to the foregoing instruction, "and particularly that part wherein the court instructs the jury that if they find from the evidence that the defendant, Charles Zimmerman, had knowledge of the loosened threshold to the said room, under which the said cache of intoxicating liquor was found, and to the making of said knowledge an element in said instruction." It is not entirely clear what counsel for the defendant had in mind when he made the objection just quoted. The contention is here made on behalf of defendant that the instruction complained of in effect informed the jury that if the defendant knew the threshold was loose, or if he knew the intoxicating liquor was under the threshold, then they should find him guilty. If the instruction can be said to convey such a meaning, it is clearly objectionable. The defendant may have known that the threshold was loose and may also have known that intoxicating liquor was stored thereunder, yet, unless he had control of and exercised dominion over the liquor, he was not in possession thereof. The instruction under review might well have confined the issue to the question of whether or not the defendant knowingly had the possession of the intoxicating liquor; but in view of other instructions given which do so confine the issue, we do not see how the jury could have been misled, much less could they have read into the instruction the meaning contended

for by the appellant. Certain it is that if the jury should have found that the defendant did not have the possession of intoxicating liquor, and did not know of the loosened threshold and of the intoxicating liquor stored thereunder, he was entitled to a verdict of not guilty. The instruction thus in effect informed the jury that if they believed the defendant's evidence they should acquit him. Defendant's knowledge or lack of knowledge of the loosened threshold was in no sense an element of the crime charged, yet such fact was a proper subject of judicial inquiry. We do not see how the language complained of could have been prejudicial to the defendant when the instructions are read and considered as a whole. The defendant is not entitled to a reversal of the judgment upon his first assignment of error.

Defendant's other assignment of error is founded upon an alleged statement made by the trial court to the jury after it appeared that the jury had difficulty in agreeing upon a verdict. After the defendant was convicted he filed a motion for a new trial. In support of such motion, counsel made and filed an affidavit where it is in substance alleged that after the jury had deliberated for about four hours they came into court and reported that they were unable to agree upon a verdict; that no reporter was present when the jury returned; that the trial judge stated to the jury that he could see no reason why they could not agree, that the facts were simple and the evidence clear; that he admonished them to go out again and find a verdict; that thereupon the jury again retired to further deliberate and in a short time returned with a verdict finding the defendant guilty; that subsequently affiant talked with one of the jurors who sat in the case; that the juror stated:

"that he thought there was a hopeless deadlock; but that he thought and believed the other jurors thought, that the said judge thought it ridiculous that no verdict was arrived at, and that he and he thought others of the jurors were influenced by the judge's said remarks, and that thereupon the jurors who were opposing a verdict voted for the verdict which was returned, and that he thought if it had not

been for said remarks of said judge no verdict would have been agreed upon by said jury."

No claim is made by appellant that any objection or exception was taken to the statement made by the trial court to the jury at the time such statement was made or at all, until the filing of the motion for a new trial. Appellant contends that the statement complained of was in the nature of an instruction to the jury, and should have been in wrting. It is well established in this jurisdiction that an exception to an instruction must be made before verdict, otherwise it may not be reviewed on appeal. The statement complained of, however, cannot well be said to be an instruction. But whether it be regarded as an instruction or as a remark, the rule is the same. An objectionable remark directed to the jury must be excepted to or it may not be reviewed on appeal. 17 C. J. 79. A remark of a judge to a jury may not be said to be an order, decision, or ruling, and therefore it is not deemed excepted to under the provisions of section 6806, Compiled Laws of Utah 1917. We are thus precluded from reviewing the instruction or remark which appellant seeks to have reviewed, because, so far as appears, no exception was taken thereto until after verdict.

The judgment is affirmed.

CHERRY, C.J., and FOLLAND and EPHRAIM HANSON, JJ., concur.

STRAUP, J. (dissenting).

As stated in the prevailing opinion, after the jury had been out about four hours deliberating on what their verdict should be, they returned in court and reported that they were unable to come to an agreement and that it appeared they would not be able to do so, whereupon the court stated to them that he could see no reason why they should not agree, that the facts were simple and the evidence clear, and told them to go out "and find a verdict." The jury thereupon again retired, and shortly brought in a verdict of guilty.

It is said the matter is not reviewable because no exception was taken to the statement or remark of the court. With respect to taking exceptions in criminal cases, we have a rather broad and sweeping statute. Comp. Laws Utah 1917, § 9189. It provides that

"The verdict of the jury, and all orders, decisions, and rulings made by the district court, including rulings on objections to, or motions to strike out, evidence, from the inception of the case, shall be deemed excepted to. Exceptions to instructions to the jury shall be taken and preserved as in civil cases."

Which (section 6806) requires exceptions to be taken at the time the charge is given or before verdict. As is seen, the only matter or thing to which an exception is required in a criminal case is to the court's charge or instructions. The statute, sections 8975 and 6802, requires that the court shall instruct the jury in writing upon the "law applicable to the case," which instructions (section 6804) "shall be read to the jury without oral comment or explanation," and (section 6802), that the court "must inform the jury that they are the inclusive judges of all questions of fact." Section 9006 further provides that "on a trial for any other offense than libel, questions of law are to be decided by the court, questions of fact by the jury."

In view of such statutory provisions, it seems to be quite clear that the statement or remark made by the court was not a part of the instructions, and in no sense was charging them as to "the law applicable to the case." The statement or remark was not intended to guide the jury as to any matter of law, and was not made for any such purpose. The jury had already been fully charged as to the law when the case was submitted to them and before they had retired to consider their verdict. And since, under the statute, the only exceptions required to be taken are "exceptions to instructions to the jury," everything else "from the inception of the case" being deemed excepted to, it is my opinion that the defendant is entitled to have a review of the matter in

hand without the taking of an express exception. Even requests to charge, when refused or modified (section 9192) need not be excepted to and may be reviewed without an exception. While the statute as to excpetions in criminal cases is a marked departure from the theretofore practice and procedure and rather sweeping in its terms, yet, it speaks for itself and should be given effect accordingly.

Though an exception to the statement or remark had been taken and though on the taking of it the statement had been retracted and the jury admonished to disregard it, yet whatever harm or mischief was occasioned by the making of it was wrought when it was made and could not well have been effaced by any attempt to blot it out.

I further think the statement or remark harmful. As is seen under the statute, a court, in criminal cases, except libel, is the sole judge of the law and the jury of the facts, and the court in each case must charge the jury "that they are the exclusive judges of all questions of fact." The court here so charged the jury and instructed them that they were the sole judges of the facts, the weight of the evidence, and the credibility of the witnesses. The evidence as to the defendant's possession of the charged intoxicating liquors was in direct conflict. The state gave evidence to justify a finding that the defendant knowingly had possession of them, and to warrant a verdict of guilty against him. The defendant testified that at the time of the alleged commission of the offense he had about fourteen roomers and boarders in his rooming house; that he at different times had found empty bottles in some of the rooms occupied by roomers; that the room, under the threshold of which the bottles of whiskey and gin were found, was but a few days before occupied by a roomer; that the defendant had not possession of the liquor and had not put it at the place where it was found and had no knowledge that it was there, or that there was any liquor in the house.

The verdict thus depended solely upon the credibility of witnesses and the weight to be given their testimony. After

deliberating on what their verdict should be, the jury reported that they were unable to agree, and that it appeared they would not be able to do so. Instead of inquiring from the jurors whether it was a matter of law or of fact which divided them (if the former, the court might by further instructions have aided them, but if the latter he could not) and instead of inquiring if they on further deliberations might probably reach an agreement, the court made the observation and gave direction, not as to any matter of law but as to the facts, by saying "he could see no reason why they could not agree, that the facts were simple and the evidence clear," and directed them, not to go out and further deliberate, but "to go out and find a verdict," which the jury did in a short time by finding and returning a verdict of guilty. There being a direct conflict in the evidence as there is, not only as to material but as to the most essential issue in the case, had the court, when charging the jury and submitting the case to them, in the first instance told them the facts in the case were simple, the evidence clear, and that he could see no reason why they should not be able to agree, it is quite clear such a statement would have been calculated to do harm and be prejudicial. I think the situation is no different, if anything worse, by telling the jury the same thing after they had considered and deliberated on the case for four hours and were unable to agree on a verdict. By so doing, the court expressed an opinion as to the character or weight of the evidence or the credibility of witnesses, when by the charge he theretofore had told the jury they were the exclusive judges of the facts, the weight of the evidence, and the credibility of the witnesses. What the court thus told the jury in effect amounted to telling them that on the evidence adduced, though in direct conflict, reasonable and fair-minded men ought not to disagree as to what their verdict should be, notwithstanding the court gave the jury, as he was required to do, two forms of verdict, one of guilty as charged in the information and the other not guilty, and, by so doing, in effect told them they properly

and lawfully could render a verdict either way, as their deliberations might determine.

The state seeks to avoid the effect of what the court told the jury by arguing that the court had not directed them what their verdict should be. The court of course did not do so by express language. However, the court, by stating that the facts were simple and the evidence clear, impliedly indicated or gave the impression that had he the determination of the case he could determine it without much or any deliberation and that the jury ought to be able to do so, and thus told them "to go out and find a verdict." The court did not say to them, either in substance or effect, that he would require them to further consider and deliberate upon the case to see if they could agree upon a verdict. He told them to go out and find one; in effect told them that on the evidence there was no occasion for any difference of opinion or for any disagreement. The natural effect of such a statement was to influence if not to constrain jurors, either favorable to a verdict of guilty or favorable to one of not guilty, to yield their opinions and convictions and join in a verdict, the "break" resulting adversely to the defendant, by jurors who theretofore stood for a verdict of not guilty, yielding their views and opinions on the facts and voting for a verdict of guilty, and in so doing may and probably were influenced in believing such was the kind of verdict the court thought should be rendered. If we look to the affidavit of counsel, such was the direct effect of the statement of the court. But I doubt the competency of the affidavit in such particular. I do not rest my views on that. I rest them on the doctrine that the statement made by the court was calculated and had a tendency to produce just such an effect, and unless on the record there is something shown to the contrary, of which there is nothing, I presume, as I should, that the statement had such effect. Many experienced lawyers in trials of causes before a jury frequently have observed that there are some jurors, usually of more or less experience in jury service, who rather resent what

may appear to them an attempt on the part of the court even to intimate any view or make any remark respecting the facts the findings of which are submitted to them, while on the other hand there are some jurors who all through the trial of a case are watchful for some remark or demeanor on the part of the court, with the view of ascertaing, if they can, what the court thinks of the case, not only as to the law applicable to it, but with respect to the facts as well, and of rendering a verdict which they think will meet the approval of the court, not only as to the law but as to the facts; and frequently, after a verdict is rendered and the jurors discharged, some of them are seen approaching the judge and inquiring if the verdict met with his approval.

Under our statute, the province of the court and the jury is well defined, the one the exclusive judge of the law and the other the exclusive judges of the facts. Neither may transgress upon the province of the other, nor should either attempt or desire to do so. Though it be true, as I think it is, that the court had not intentionally invaded the province of the jury or with any desire to influence or control their verdict, yet the effect of what the court did is the same as though it had been done intentionally and for such a purpose.

I thus am of the opinion that the court ought to have granted a new trial.