STATE of Utah, Plaintiff and
Respondent,

v.

Zolla HALES, Defendant and Appellant.

No. 18083.

Supreme Court of Utah.

July 7, 1982.

W. Andrew McCullough of McCullough &
Jones, Orem, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F.
Dorius, Asst. Atty. Gen., Salt Lake City, for
plaintiff and respondent.

OAKS, Justice:

This is an appeal from a jury conviction
of willfully destroying public records by a
custodian. U.C.A., 1953, § 76–8–412 (felo-
ny of the third degree). Defendant con-
tends (1) that prosecutorial comments on
her refusal to testify violated her privilege
against self-incrimination; and (2) that she
should have been charged, if at all, with
tampering with records, § 76–6–504 (class
B misdemeanor), since the two statutes pro-
hibit the same conduct.

Defendant was employed as town record-
er of the town of Elk Ridge, formerly Sa-

lem Hills, from December, 1976, until January, 1980. Since the town had no suitable depository, she was authorized to keep the town's financial records in her home. Her duties included the receipt and disbursement of town funds. From 1977 until April, 1980, defendant's husband, as a member of the Elk Ridge Town Council, was authorized to countersign checks drawn by defendant on the town's account.

In November, 1979, defendant announced her resignation. Teri Tuttle became town recorder in January, 1980, but defendant, who claimed to be preparing the ledgers for audit, delivered no financial records to Tuttle when she took office.

On February 11, 1980, Tuttle received a phone call from defendant urging her to come to defendant's home, because, defendant said, she had "just burned up the Town's records." When Tuttle arrived, defendant told her that on her way to the auditor's office she noticed that she had forgotten the records; that upon returning home she discovered the records on fire in her living room; and that using some towels she picked up a metal chair containing the burning records, carried it out to the patio, and doused the flames with water. Defendant surmised that since she had been working with the records in front of the fireplace, a spark had popped over the screen and ignited the records. Defendant's husband, whom she had contacted first and who had preceded Tuttle to the scene, asked Tuttle in a "very persistent" way to sift through the debris and take whatever was salvageable to her home. Tuttle refused on the ground that "someone in authority" should inspect the debris before she looked through it. At Tuttle's insistence, the mayor was called. He notified the sheriff and the county fire marshall, who also came to the scene, as did a number of other investigators.

Defendant was charged with willfully destroying public records in her custody. U.C.A., 1953, § 76–8–412. Although the State introduced a voluntary statement defendant made at the request of a deputy sheriff, defendant did not testify at the trial. Her husband was the only witness called by the defense. The State put on a number of experts whose testimony tended to establish that no fire could have occurred in the manner defendant described. The jury returned a verdict of guilty, and the district court denied defendant's motion for a new trial.

1. In his closing argument, the prosecutor stated:

Now with regard to Mr. Hales' testimony, he has not been accused in this case, he's not on trial, but [sic] he wasn't even a witness to the burning or to the aftermath of the burning, the immediate aftermath. But yet he's the one who tells the story.

In his rebuttal to the defendant's closing argument, the prosecutor stated:

Now, the only testimony, really, if testimony it is regarding how it occurred, how the burning occurred, comes from the Statement of the defendant that you will have as an exhibit. She would be the only one to come in and say how it happened, because apparently her husband was not at home at the time, and yet he's the one who testifies as to what occurred. Now it seems to me the defendant's argument to you is asking you to absolutely disregard your sense with regard to who has proved what. I'm surprised he made no comment on the issue of motive. That's strange.

A prosecutor has the duty and right to argue the case based on the "total picture shown by the evidence or the lack thereof," *State v. Kazda,* Utah, 540 P.2d 949, 951 (1975), including reference to the paucity or absence of evidence adduced by the defense. But prosecutorial comment on a defendant's refusal to testify may violate a defendant's privilege against self-incrimination. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *State v. Eaton,* Utah, 569 P.2d 1114 (1977); *State v. Kazda, supra.* Thus, a prosecutor commits constitutional error when his statement is "manifestly intended or [is] of such character that a jury would naturally and necessarily construe it to amount to a comment on the failure of the accused to testify." *State v. Nomeland,* Utah, 581 P.2d

1010, 1011 (1978), quoting *State v. Jefferson,* 116 R.I. 124, 137, 353 A.2d 190, 198 (1976). *United States v. Jones,* 648 F.2d 215 (5th Cir.1981); *United States v. Harris,* 627 F.2d 474 (D.C.Cir.1980); *United States v. Reicin,* 497 F.2d 563 (7th Cir.1974); *United States v. Tierney,* 424 F.2d 643 (9th Cir. 1970).

■ The prosecutor's statements in the instant case come perilously close to, if they do not exceed, the limits of permissible comment under this standard. However, we are precluded from reaching the issue of their constitutionality by defendant's failure to object to them at trial. In *State v. Winger,* 26 Utah 2d 118, 485 P.2d 1398 (1971), a criminal defendant urged that a prosecutor's comment on the defendant's failure to testify violated the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 12 of the Utah Constitution. A unanimous Court stated:

> *Defense counsel did not request any admonitory instructions concerning the alleged errors. Neither did counsel take exception to the remarks of the prosecutor nor request the court to direct the remarks to be withdrawn.* No motion for mistrial or a new trial was made predicated on these errors. The trial court had no opportunity to rule on this matter and correct any of the alleged errors. This is a court of review, which will not, in the absence of exceptional circumstances, not apparent here, rule on a matter which is raised for the first time on appeal. [Emphasis added.]

26 Utah at 121, 485 P.2d at 1400. *See also State v. Lee,* Utah, 633 P.2d 48 (1981); *State v. Hansen,* 22 Utah 2d 63, 448 P.2d 720 (1968); *State v. Zimmerman,* 78 Utah 126, 1 P.2d 962 (1931); Utah R.Evid. 4.

■ Seeking to distinguish *Winger,* defendant argues that because she moved for a new trial based on the alleged errors—thereby giving the trial court an opportunity to rule on them prior to our review—her failure to make a contemporaneous objection should not be fatal on appeal. We do not agree that the absence of a motion for new trial was essential to the *Winger* holding or that such a motion in the instant case removes it from the purview of *Winger.* In *State v. Zimmerman,* 78 Utah at 130, 1 P.2d at 964, this Court held that a defendant's objection to a remark made by a judge to the jury before completion of their deliberation "must be made *before verdict,* otherwise it may not be reviewed on appeal." This principle applies here. An objection lodged outside the hearing of the jury and after the prosecution's closing arguments would not have drawn the jury's attention to the questionable remarks, and it would have alerted the court to the advisability of instructing the jury to draw no adverse inferences from the defendant's failure to testify. The value of this curative instruction is evident from the fact that a defendant is constitutionally entitled to such an instruction upon request. *Carter v. Kentucky,* 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981).[1] A curative instruction is often mentioned by courts as an important consideration in reviewing the constitutionality of prosecutorial comments. *United States v. Heller,* 625 F.2d 594, 600 (5th Cir.1980); *United States v. Burts,* 536 F.2d 1140, 1142 (6th Cir.1976); *United States v. Farnkoff,* 535 F.2d 661, 668 (1st Cir.1976); *United States v. Adamo,* 534 F.2d 31, 40 (3rd Cir.1976); *Commonwealth v. Jones,* 242 Pa.Super. 471, 477, 364 A.2d 368, 371 (1976); *State v. Torres,* 16 Wash. App. 254, 259, 554 P.2d 1069, 1072 (1976). In the instant case, defendant's failure to lodge a timely objection that would have allowed the court to mitigate any damage done by the prosecutor's comments precludes our review of the alleged error.

■ 2. Defendant contends that she was unlawfully charged. Where two statutes prohibit identical conduct but impose different penalties, an accused is entitled to be charged under the statute entailing the less severe punishment. *State v. Loveless,* Utah, 581 P.2d 575 (1978); *Rammell v. Smith,* Utah, 560 P.2d 1108 (1977); *State v.*

---

1. Conversely, a defendant's Fifth and Fourteenth Amendment rights are not infringed by a cautionary instruction given over his objection.

*Lakeside v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978).

*Shondel,* 22 Utah 2d 343, 453 P.2d 146 (1969).[2]

■ Defendant was charged with the crime of stealing, destroying, or mutilating public records by a custodian, U.C.A., 1953, § 76–8–412:

> Every officer having the custody of any record, map, or book, or of any paper or proceedings of any court, filed or deposited in any public office, or placed in his hands for any purpose, who is guilty of stealing, willfully destroying, mutilating, defacing, altering, falsifying, removing, or secreting the whole or any part thereof, or who permits any other person so to do, is guilty of a felony of the third degree.

The crime of tampering with records, U.C.A., 1953, § 76–6–504, which defendant argues proscribes identical conduct, is defined as follows:

> (1) Any person who, having no privilege to do so, knowingly falsifies, destroys, removes, or conceals any writing, other than the writings enumerated in section 76–6–503, or record, public or private, with intent to deceive or injure any person or to conceal any wrongdoing is guilty of tampering with records.
>
> (2) Tampering with records is a class B misdemeanor.

Because section 76–6–504 is a class B misdemeanor and section 76–8–412 is a felony of the third degree, if the two statutes proscribe identical conduct defendant is entitled to a reduction in sentence. *State v. Shondel, supra.*

Even assuming arguendo that the acts prohibited by these two sections are identical, however, section 76–8–412 applies to an "officer having the custody of any record," whereas section 76–6–504 applies to "[a]ny person." The distinction is manifestly rational. Public officials have greater access to public records and, by virtue of the public trust reposed in them, a higher responsibility to safeguard the interests and property of the public than do other members of the community. For a public official to destroy public records is a betrayal of the public trust and therefore more serious than the same act committed by a private individual. Similarly, any person with formal custody of public records, even if not a public officer, has received a limited public trust on a temporary basis. But because public officers and other custodians are themselves charged with protecting the records entrusted to them, the State has little means other than severe criminal deterrents to guard against their destructive acts.

Thus, the statutory scheme protecting records makes their destruction by an *official with custody* a felony of the third degree, by a *person with custody* a class A misdemeanor (§ 76–8–413), and by *any other person* a class B misdemeanor. This three-tiered approach is well grounded in reason and practicality. In such a circumstance, the State may, as it did here, charge a violation of the statute that "applies more specifically to [defendant's] offense . . . ." *Rammell v. Smith,* 560 P.2d at 1110.

Defendant's conviction is affirmed.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.

---

**2.** Similarly, even where statutes prohibit clearly different conduct, if there is reasonable doubt as to which of two or more degrees of offense the defendant committed, he may be convicted only of the lower degree. U.C.A., 1953, § 77–17–1.