STATE OF NORTH CAROLINA v. CHESTEAN HARRELL

No. 8319SC797

(Filed 6 March 1984)

1. **Searches and Seizures § 12— reasonable suspicion to stop defendant—motion to dismiss assault charges properly denied**

   Defendant's Fourth Amendment protection against unreasonable searches and seizures was not violated when an officer approached defendant around 2:30 a.m. at a Cannon Mills plant after a security guard had called the police station and requested that an officer be sent to the plant parking lot; the security guard had observed suspicious activity involving defendant's vehicle; defendant was sitting in a vehicle that matched the security guard's description; and the Cannon Mills parking lot was known to be a high crime area. These circumstances created a reasonable suspicion of criminal activity and furnished ample justification for a brief investigatory stop. Even if defendant had been illegally restrained under the Fourth Amendment, defendant's act of striking the officer in the face was an unnecessary show of force in response to the officer's retention of his license and request to search his car. G.S. 14-33 (b)(4).

2. **Criminal Law § 98.2— failure to sequester witnesses—no abuse of discretion**
    There was no abuse of discretion in the denial of defense counsel's motion
    to sequester the prosecution witnesses.

APPEAL by defendant from *Long, James M., Judge.* Judgment entered 17 March 1983 in Superior Court, CABARRUS County. Heard in the Court of Appeals 13 February 1984.

Defendant was convicted of assaulting a law enforcement officer in violation of G.S. 14-33(b)(4).

The State's evidence tended to show:

Linda Childress, a security guard at the Cannon Mills plant, testified that at around 2:30 a.m. on 25 September 1981 she was in the plant control room watching the video monitors, which were focused on the plant parking lot. At around 2:30 a.m., she observed defendant, driving an older model Chevrolet, pull into the lot and park next to what appeared to be a Lincoln Continental. Defendant was conversing with a person in the Lincoln when a third person came into camera view. The third person pulled something out of his jacket and handed it to the person in the Lincoln. The object was returned to the third person, who then left. Suspicious, Ms. Childress called the Kannapolis Police Department and talked to the dispatcher, Sergeant P. M. Bennick. She told Officer Bennick that something suspicious was going on in the parking lot, perhaps, a drug exchange. She described the vehicles involved in the exchange and asked that a police officer be dispatched to the parking lot. Officer Bennick broadcast a description of the vehicles to several other officers.

Officer Kenneth Woodard was told to check the individuals in the parking lot for suspicious activity or drug activity. Officer Woodard testified that the Cannon Mills parking lot was a high crime area and that the police had received numerous reports in the past concerning auto larceny and malicious damage to automobiles. When Officer Woodard arrived at the parking lot, he observed two vehicles, an older model Chevrolet and a Mercury, parked side by side. He approached defendant and asked for some identification. Defendant gave Woodard his driver's license, but shortly thereafter, demanded that it be returned. Woodard told defendant he needed it to check to see whether defendant

was employed with Cannon Mills. Defendant got out of his car and reached for his driver's license. Woodard asked defendant if he could look inside his car. Defendant refused, struck Woodard in the face, and attempted to dive into his car through the window. Officer Woodard and two fellow officers, Coker and Ballard, attempted to restrain defendant. Defendant fell to the ground, kicking the officers. Officer Woodard then struck defendant with his flashlight so that he could handcuff him, and arrested him for assaulting an officer.

Detective B. F. Ballard testified that he was called to the Cannon Mills parking lot to check for a possible drug exchange among persons in a Chevrolet, a Lincoln Continental, and a third vehicle leaving the lot. When Ballard arrived at the parking lot, Officer Woodard was talking to defendant and had defendant's license. Ballard then saw defendant strike Officer Woodard in the mouth and he went to help Officer Woodard.

Officer Coker testified that he, too, was called to the Cannon Mills parking lot to check several vehicles. He, too, saw defendant strike Officer Woodard in the face.

Captain Templeton, squad lieutenant, testified that the officers' story upon arriving at the station at around 2:45 a.m. substantially matched their testimony at trial.

Defendant's evidence tended to show:

Defendant, an employee at Cannon Mills, worked the 11:00 p.m. to 7:00 a.m. shift. On 25 September 1981, he and Tyrone Ijams, a co-worker, drove to work. Defendant told his boss that he was sick and was unable to work. Defendant left, but agreed to return to pick up Ijams at 3:00 a.m. Defendant returned to the parking lot at around 2:30 a.m. to pick up Ijams. He parked next to a fellow employee, Lola Washington. Defendant was sitting in his car when Officers Wood and Woodard approached and began searching the car, checking inside the glove compartment and under the seat. Officer Woodard asked for defendant's driver's license and told him to get out of the car. Officer Wood searched defendant, found nothing, and told Officer Woodard to take the keys from the car so they could check the trunk. Defendant, hearing this, pulled the keys from the ignition. Officer Woodard then began choking defendant and six other officers at the scene began

beating defendant until he let go of the keys. Defendant was handcuffed and thrown into the patrol car.

Lola Washington testified that on 25 September, she was not feeling well and decided to leave work early. At around 2:30 a.m., she was in her car in the parking lot when defendant drove in and parked next to her car. She testified that shortly thereafter, four police cars arrived. Defendant was thrown against his car, his person and his car were searched, and he was struck on the top of the head and beaten. Ms. Washington testified that she did not see defendant hit anyone.

*Attorney General Edmisten, by David E. Broome, Jr., Associate Attorney General, for the State.*

*Chambers, Ferguson, Watt, Wallas, Adkins and Fuller, P.A., by James E. Ferguson, II, and Thomas M. Stern, for defendant appellant.*

VAUGHN, Chief Judge.

Defendant alleges, first, that the police encounter underlying the charge of assault was unconstitutional, and, second, that the trial judge's failure to sequester witnesses denied defendant due process and constituted prejudicial error. We deal separately with each of defendant's claims.

I

[1] Defendant contends that his constitutional rights were violated when he was stopped without reasonable suspicion of criminal activity and that, therefore, his motion to dismiss the assault charges should have been granted. We disagree.

The fourth amendment protects individuals against unreasonable searches and seizures. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). Not every police encounter, however, warrants fourth amendment scrutiny. Under *Terry v. Ohio* and its progeny, a three-tiered standard has developed by which to measure the need to investigate possible criminal activity against the intrusion on individual freedom which the investigation may entail:

(1) Communication between police and citizens involving no coercion or detention are outside the scope of the fourth amendment.

(2) Seizures must be based on reasonable suspicion.

(3) Arrests must be based on probable cause.

*State v. Sugg,* 61 N.C. App. 106, 300 S.E. 2d 248, *review denied,* 302 S.E. 2d 257 (1983); *See Terry v. Ohio, supra.*

A police seizure occurs when a reasonable person, in light of the surrounding circumstances, would have believed that he was not free to walk away. *State v. Grimmett,* 54 N.C. App. 494, 284 S.E. 2d 144 (1981), *review denied,* 305 N.C. 304, 290 S.E. 2d 706 (1982); *U.S. v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed. 2d 497, *reh. denied,* 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed. 2d 1138 (1980). The evidence in this case shows that several officers went to the Cannon Mills parking lot in response to a request from the plant security guard. Officer Woodard approached defendant, who was sitting in his car in the parking lot, and asked for some identification. Defendant gave him his driver's license, but very soon thereafter asked that it be returned. Officer Woodard told defendant he needed to keep it to determine whether defendant was employed by Cannon Mills. The officer's conduct in this case amounted to a seizure; a reasonable person would not have believed he was free to walk away. *See State v. Thompson,* 296 N.C. 703, 252 S.E. 2d 776, *cert. denied,* 444 U.S. 907, 100 S.Ct. 220, 62 L.Ed. 2d 143 (1979); *State v. Grimmett, supra; U.S. v. Mendenhall, supra.*

A seizure falls within the second tier of fourth amendment analysis; the intrusion on personal freedom must be balanced against the government's interest in crime prevention. *See Terry v. Ohio, supra.* Officer Woodard's conduct in the instant case was thus justifiable if specific and articulable facts, taken together with the rational inferences from those facts created a reasonable suspicion of criminal activity. *State v. Thompson, supra.* The circumstances surrounding the seizure must be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by experience and training. *Id.; see also State v. Gray,* 55 N.C. App. 568, 286 S.E. 2d 357 (1982).

The circumstances known to Officer Woodard before approaching defendant were:

(1) The time was around 2:30 a.m.

(2) The Cannon Mills work shift, which had begun at 11:00 p.m. would not end until 7:00 a.m.

(3) A security guard at Cannon Mills had called the police station and requested that an officer be sent to the plant parking lot.

(4) The security guard had observed suspicious activity — a possible drug exchange involving occupants of a Chevrolet, a Lincoln, and a vehicle already gone.

(5) Defendant was sitting in a Chevrolet that matched the security guard's description.

(6) The Cannon Mills parking lot was known to be a high crime area.

We hold that these circumstances created a reasonable suspicion of criminal activity and furnished ample justification for a brief investigatory stop.

Defendant argues that the circumstances surrounding the seizure here are similar to those in *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed. 2d 357 (1979), wherein two police officers cruising in a patrol car at 12:45 in the afternoon observed two men walking away from one another in an alley known to have a high incidence of drug trafficking. The Court held that the police request that defendant identify himself and explain what he was doing violated the fourth amendment, since the police had no specific basis for believing he was involved in criminal activity. *Id.*

We find the *Brown* case to be inapposite to the case *sub judice*. Here, the police were responding to a request from the company security guard to investigate suspicious activity and a possible drug exchange, perhaps involving defendant. It is well recognized that a description of either a person or an automobile may furnish reasonable grounds for arresting and detaining a criminal suspect. *State v. Adams*, 55 N.C. App. 599, 286 S.E. 2d 371 (1982). So, too, may such a description, considered together

with the surrounding circumstances, furnish the basis for a lesser intrusion—the investigatory stop and seizure of defendant in this case.

A seizure, to be justified under the fourth amendment, must not only be based on a reasonable suspicion, but must also be brief. *State v. Grimmett, supra.* The State's evidence showed that Officer Woodard's conduct, in asking for and retaining defendant's driver's license in order to determine his identity and employment status did not unnecessarily intrude on defendant's freedom. Defendant was stopped but momentarily before he grabbed for his license and struck Officer Woodard in the face. A brief stop of an individual in order to maintain the status quo while obtaining more information does not violate the fourth amendment. *State v. Douglas*, 51 N.C. App. 594, 277 S.E. 2d 467 (1981), *aff'd per curiam*, 304 N.C. 713, 285 S.E. 2d 802 (1982); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed. 2d 612 (1972).

We note that defendant's evidence suggests that the officers used physical force to restrain defendant while they engaged in an unlawful search of defendant's automobile. On appeal from the denial of defendant's motion to dismiss, however, the evidence must be viewed in the light most favorable to the State, with the State receiving the benefit of every reasonable inference to be drawn therefrom. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). Contradictions and discrepancies in the evidence are for the jury to resolve. *Id.* The evidence in this case, viewed in the light most favorable to the State, warranted jury consideration.

Defendant argues that the fact that the jury found against defendant shows that they were not properly instructed on the effect of an illegal search and seizure. The jury charge was not, however, included in the record on appeal. We must presume, therefore, that the jury was properly instructed as to the law arising on the evidence. *State v. Hedrick*, 289 N.C. 232, 221 S.E. 2d 350 (1976).

Finally, we note that even if defendant had been illegally restrained under the fourth amendment, he had the right to use only such force as reasonably appeared necessary to prevent the unlawful restraint of his liberty. *State v. Mobley*, 240 N.C. 476, 83 S.E. 2d 100 (1954); *See Keziah v. Bostic*, 452 F. Supp. 912 (W.D.N.C. 1978). Defendant's act of striking Officer Woodard in

the face was an unnecessary show of force in response to the officer's retention of his license and request to search his car. Defendant was, therefore, properly charged under G.S. 14-33(b)(4).

## II

[2] At trial, before the State had introduced its evidence, defense counsel moved to sequester the prosecution witnesses. The trial judge denied defense counsel's motion. Defendant contends that this denial constituted an abuse of discretion and a denial of due process.

The rule regarding sequestration, stated in G.S. 15A-1225, provides in pertinent part, that "[u]pon motion of a party the judge may order all or some of the witnesses other than the defendant to remain outside of the courtroom until called to testify." The decision whether to sequester witnesses is addressed to the discretion of the trial judge and is not reviewable on appeal absent a showing of abuse of discretion. *State v. Royal*, 300 N.C. 515, 268 S.E. 2d 517 (1980).

Defendant cites several reasons attempting to show an abuse of discretion on the part of the trial judge. Specifically, defendant argues that the large number of prosecution witnesses who testified as to the same set of facts; the hotly debated issues of fact; the existence of a civil suit instituted by defendant against three of the police officers involved in the incident; the discrepancies in the testimony of two officers during a prior trial; and the fact that defendant's motion was timely, made in good faith, and well-supported are factors showing necessity for sequestration. While defendant's arguments are persuasive, we find no abuse of discretion on the part of the trial judge in refusing to sequester the witnesses. Due process does not automatically require separation of witnesses who are to testify to the same set of facts.

The aim of sequestration is two-fold: First, it acts as a restraint on witnesses tailoring their testimony to that of earlier witnesses, and second, it aids in detecting testimony that is less than candid. *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed. 2d 592 (1976). We find nothing to indicate that the testimony of any of the State's witnesses was influenced by the testimony of any other witness. We are not persuaded that the existence of a separate civil suit by defendant against three police

officers involved in the incident tended to influence the testi-monies during the trial hereunder. We find nothing in the record to indicate the existence or nature of alleged discrepancies in the testimony of two police officers during a prior trial.

In general, "the trial and disposition of criminal cases is the public's business and ought to be conducted in open court. The public, and especially the parties, are entitled to see and hear what goes on in court." 1 Brandis on North Carolina Evidence § 20, *quoting, In re Peoples*, 296 N.C. 109, 250 S.E. 2d 890 (1978), *cert. denied*, 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed. 2d 297 (1979). Defendant received a fair trial. Contrary to defendant's conten-tion, we find no violation of defendant's right to confront and cross-examine witnesses.

No error.

Judges WEBB and JOHNSON concur.