STATE of Utah, Plaintiff and Respondent,

v.

Rudy Ringo DURAN, Defendant and Appellant.

No. 870531–CA.

Court of Appeals of Utah.

April 18, 1989.

R. Paul Van Dam and Dan R. Larsen, Salt Lake City, for plaintiff and respondent.

Before BENCH, BILLINGS and GREENWOOD, JJ.

## OPINION

BILLINGS, Judge:

Defendant Rudy Ringo Duran, an inmate at the Utah State Prison, was convicted by a jury of assault by a prisoner, a third degree felony, in violation of Utah Code Ann. § 76–5–102.5 (1978). On appeal, Duran claims (1) the evidence was insufficient to support the jury's guilty verdict which rejected Duran's claim of self-defense and defense of habitation, and (2) the trial court erred in refusing to reduce the felony charge to a misdemeanor. We affirm.

## FACTS

The day of the assault, Duran was an inmate at the Utah State Prison. On October 28, 1986, a disturbance erupted in "A" block where Duran was housed. The disturbance was precipitated by an inmate's attempt to prevent prison guards from searching his cell. During the exchange, other inmates on "A" block, allegedly including Duran, began shouting and screaming their support. The inmate subsequently assaulted one of the prison guards for which he was taken to maximum security.

Officer Carpenter, who was involved in the incident, wrote a report charging Duran with "verbal violence." Officer Carpenter went to Duran's cell and advised Duran of the report and stated that he would personally ensure Duran would be the next person to go to maximum security.

The following morning, Lt. Walter Yankovich reviewed three separate written reports regarding Duran's involvement in the disturbance. The reports indicated Duran attempted to incite other inmates to assault Officer Carpenter by yelling and throwing excrement. Duran was also charged with verbally threatening another inmate. Lt. Yankovich confirmed the reports, and then conferred by telephone with his superior,

Richard G. Uday and Brooke C. Wells, Salt Lake City, for defendant and appellant.

Captain Johnson. Together, they determined that Duran should be transferred to maximum security. Thereafter, Lt. Yankovich summoned Officers Olin and Uriate to assist in transferring Duran to maximum security.

Duran claims he was sleeping when the officers arrived. Lt. Yankovich instructed Duran to get dressed because he was being moved to maximum security. Because Utah state prison policy requires that all prisoners be handcuffed when being transferred to a more restrictive facility, Lt. Yankovich directed Duran to turn around to be handcuffed. Although Duran admitted at trial that he was aware of prison policy, he refused to be handcuffed and instead, declared "I'm not going to max." Lt. Yankovich repeated his instructions. Duran again refused to be handcuffed, and continued to stand in the center of the cell with his arms folded across his chest.

The other officers then entered Duran's cell, and Lt. Yankovich instructed Duran for the third time to turn around to be handcuffed. Duran responded by assuming a combative stance; dropping his arms to his side and spreading his legs slightly apart. As Lt. Yankovich turned away from Duran to get a pair of handcuffs from Officer Olin, Duran punched Lt. Yankovich in the face. The blow broke Lt. Yankovich's nose and blurred his vision momentarily. Duran again attempted to strike the Lieutenant, but the other officers intervened and subdued Duran as he continued to resist. Duran was ultimately handcuffed and transferred to maximum security.

At trial, the lower court instructed the jury on theories of self-defense and defense of habitation. The jury rejected these defenses, and Duran was subsequently convicted of assault by a prisoner in violation of Utah Code Ann. § 76–5–102.5 (1978).

On appeal, Duran raises two challenges to his conviction. First, he claims the evidence was insufficient to support the jury's guilty verdict arguing the evidence conclu-

sively established that he acted in self-defense or in the alternative, defense of habitation. Second, Duran asserts the trial court erred in refusing to reduce the felony assault charge to a misdemeanor because Utah Code Ann. § 76–5–102.5 (1978), a third degree felony, and Utah Code Ann. § 76–5–102.4 (1978) (amended 1988), a class A misdemeanor, proscribe the same conduct.

## ASSAULT BY PRISONER

■ Duran claims the jury's verdict is not supported by the evidence. Specifically, Duran contends the attempt to transfer him to maximum security without first affording him proper notice and a hearing entitled Duran to forcibly resist the officers' efforts. Thus, Duran argues the evidence conclusively established the elements of self-defense, Utah Code Ann. § 76–2–402 (1978), and/or defense of habitation, Utah Code Ann. § 76–2–405 (1988). In reviewing a claim of insufficiency of the evidence,

"we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury. We reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he [or she] was convicted."

*State v. Verde,* 770 P.2d 116, 124 (Utah 1989) (quoting *State v. Petree,* 659 P.2d 443, 445 (Utah 1983)).

Utah Code Ann. § 76–5–102.5 (1978), provides "[a]ny prisoner who commits assault, intending to cause bodily injury, is guilty of a felony of the third degree." Duran admits he struck the guard, but claims his conduct was legally justified because he acted in self-defense and/or defense of habitation. We disagree, and find the jury verdict implicitly rejecting Duran's statutory defenses, is supported by the evidence and consistent with Utah authority.[1]

1. In Utah, a defendant is not required to prove affirmative defenses "beyond a reasonable doubt, or even by a preponderance of the evi-

dence." *State v. Knoll,* 712 P.2d 211, 214 (Utah 1985). Rather, " '[t]he ultimate burden of proving the defendant's guilt beyond a reasonable

To successfully assert a claim of self-defense, a defendant must "reasonably [believe] that such force is necessary to defend himself ... against such other's imminent use of unlawful force." Utah Code Ann. § 76–2–402(1) (1978). Similarly, defense of habitation requires that a defendant "reasonably believes that the force is necessary to prevent or terminate the other's unlawful entry into or attack upon his habitation...." *Id.* at § 76–2–405 (1988). The Utah Supreme Court has interpreted reasonable in the context of §§ 76–2–402(1) and –405 "to mean objectively reasonable." *In re R.J.Z.*, 736 P.2d 235, 236 (Utah 1987).

Duran raises two arguments with regard to the statutory defenses. First, Duran claims his procedural due process rights were violated when the guards attempted to transfer him to maximum security without first giving him written notice of his alleged misconduct and a hearing prior to the transfer.[2] Duran raises the alleged procedural violations for the purpose of satisfying the requisite "unlawful" requirement set forth in both statutes. Duran argues the "unlawful" i.e., unconstitutional entry and use of force rendered his assault justifiable. Second, Duran claims the evidence demonstrates conclusively that his fears were reasonable under the circumstances. We address each argument separately.

For purposes of this appeal, we will assume Duran did not receive the requisite notice and hearing before his transfer.[3] Thus, the precise issue before us is whether a violation of Duran's constitutional rights justified Duran's resistance to his transfer by means of physical force. Duran cites no authority for the proposition that a prison inmate may forcibly resist a perceived unconstitutional act by a prison guard and similarly, our independent research has revealed none.

We do, however, acknowledge counsel's effort to analogize this to an unlawful arrest situation, but do not find the analogy persuasive.[4] Defendant's argument is incompatible with the operation and character of a prison environment. This is so in

doubt remains on the state, whether defendant offers any evidence in an effort to prove affirmative defenses or not.'" *Id.* (quoting *State v. Torres,* 619 P.2d 694, 695 (Utah 1980)).

**2.** The United States Supreme Court has held that when prison inmates are transferred to maximum security for disciplinary reasons, they are entitled to minimum procedural due process safeguards. *See Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed. 2d 935 (1974). Such procedural protections include:

An opportunity to appear before the decision-making body; written notice of the charge against him in advance of the hearing; an opportunity to present witnesses and documentary evidence "when [it] will not be hazardous to institutional safety or correctional goals;" a written statement of the reasons for the decision to punish him and of the evidence on which it is based; and, if he is illiterate or if the issues are complex, counsel-substitute ... to help prepare his defense. *Wright v. Enomoto,* 462 F.Supp. 397, 403 (N.D. Cal.1976), *aff'd,* 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed. 2d 935 (1974)).

**3.** Whether Duran's due process rights were violated is not before this court. Based on the testimony at trial, it is debatable whether Duran's transfer entitled him to the procedural protections espoused by the United States Supreme Court in *Wolff.* We do not express an opinion on this issue, but note that Duran filed similar grievances through the Inmate Grievance Procedure and they were denied.

**4.** *See, e.g., Brooks v. State,* 144 Ga.App. 97, 240 S.E.2d 593, 595 (1977); *Watkins v. State,* 350 So.2d 1384, 1386 (Miss.1977); *State v. Ekkelkamp,* 42 Wash.App. 375, 711 P.2d 1076, 1078 (1985). *See generally* Annotation, *Modern Status of Rules as to Right to Forcefully Resist Illegal Arrest,* 44 A.L.R.3d 1078 (1972). There is disagreement among jurisdictions as to a private citizen's right to resist an unlawful arrest. Some jurisdictions have modified the traditional common law right to resist an unlawful arrest by reasonable force, and hold that a person may resist an unlawful arrest only in those instances where excessive force is being used to effectuate the arrest. *See, e.g., Brown v. Anchorage,* 680 P.2d 100, 104 (Alaska Ct.App.1984); *State v. Franz,* 9 Kan.App.2d 319, 676 P.2d 157, 158 (1984). Other jurisdictions hold that a person *"may not* use force to resist a peaceful arrest by one he knows, or has good reason to believe, is an authorized peace officer performing his duties, regardless of whether the arrest is illegal ... [under] the circumstances." Annotation, *supra,* at 1087. *See also* Utah Code Ann. § 76–8–305 (1988). This issue has not been resolved in Utah.

part because the right to resist an unlawful arrest is normally limited to the resistance necessary to avoid or escape the arrest. *See, e.g., Brooks v. State,* 144 Ga.App. 97, 240 S.E.2d 593, 595 (1977); *State v. Harrell,* 67 N.C.App. 57, 312 S.E.2d 230, 235 (1984); *Watkins v. State,* 350 So.2d 1384, 1386 (Miss.1977). In an unlawful prison transfer situation, there simply is no place to go to resist the allegedly "unlawful" or "unconstitutional" act of the prison guards. Moreover, permitting inmates to resist prison authority based on actual or perceived constitutional violations would create chaos in an already volatile environment, and endanger not only prison employees but other prisoners as well.

> [S]elf-help by the inmate cannot be recognized as an acceptable remedy. There must, in most instances ... be compliance with the orders of the correction personnel, or acceptance of the penalties properly applicable to noncompliance. The risks inescapably attendant on the refusal of an inmate to carry out even an illegal order of a correction officer are such as to require compliance at the time with the right of retrospective administrative or judicial determination as to the legality of the order.

*Rivera v. Smith,* 63 N.Y.2d 501, 483 N.Y.S.2d 187, 194, 472 N.E.2d 1015, 1022 (1984).

■ We agree with the New York Court of Appeals, and hold that a prison inmate is not justified in resisting prison authorities solely on the basis of an actual or perceived constitutional violation.[5] Instead, prison inmates must resort to either an administrative or judicial proceeding to raise the appropriate challenges.

■ We next address Duran's claim that the record conclusively establishes his fear of the prison guards was reasonable and, therefore, justified his assaultive behavior.

In this regard, Duran argues he reasonably believed he had to strike the prison guard to protect himself, notwithstanding his admission that the prison guards neither verbally nor physically threatened him. Duran claims the *mere presence* of three guards in his cell constituted a greater force than necessary to transfer a prisoner. Duran's explanation is not persuasive.

This case is not unlike the Utah Supreme Court's decision in *State v. Maestas,* 564 P.2d 1386 (Utah 1977). In *Maestas,* the defendant, who was convicted of assault by a prisoner, argued that his assault of another prisoner was justified because of the inherent fear of violence associated with a prison environment, and because he had been assaulted before. The Utah Supreme Court agreed with the trial court that defendant's arguments did not sufficiently evidence a "reasonable" fear, thereby warranting a jury instruction on self-defense. *Maestas,* 564 P.2d at 1390.[6]

Thus, under *Maestas,* it is questionable whether Duran was even entitled to a self-defense or defense of habitation jury instruction. Nevertheless, the trial court gave jury instructions on both defenses.

---

5. Even in an unlawful arrest situation, some jurisdictions have held that a citizen is not justified in using force solely on the grounds that a police officer is violating his constitutional rights or on the basis that the citizen "believes" his rights are being violated. *State v. Wick,* 331 N.W.2d 769, 771 (Minn.1983). *Accord Brown v. Anchorage,* 680 P.2d 100, 104 (Alaska Ct.App. 1984); *People v. Taylor,* 112 Ill.App.3d 3, 67 Ill.Dec. 667, 668, 444 N.E.2d 1151, 1152 (1983); *State v. Harrell,* 67 N.C.App. 57, 312 S.E.2d 230, 235 (1984).

6. At oral argument, Duran's counsel raised for the first time on appeal, an issue recently addressed by this court in *State v. Moritzsky,* 771 P.2d 688 (Utah App.1989). Counsel claims the jury instruction on defense of habitation in this case did not include the presumption contained in Utah Code Ann. § 76-2-405(2) (1988) which provides a "person ... is presumed to have acted reasonably and had a reasonable fear of ... death or serious bodily injury if the entry or attempted entry is unlawful *and is made or attempted by use of force, or in a violent and tumultuous manner, or surreptitiously or by stealth....*" (emphasis added). Counsel concedes the issue was not raised below but claims the failure to include an instruction regarding the presumption rendered Duran's right to assistance of counsel ineffective as a matter of law. We find there was absolutely no evidence that the prison guards entered Duran's cell surreptitiously, by stealth, or in a violent and tumultuous manner thereby entitling him to the statutory presumption. Accordingly, defense counsel's argument is without merit.

The jury rejected Duran's claims, and we find that the evidence was not " 'sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime....' " *State v. Verde*, 770 P.2d 116, 124 (Utah 1989) (quoting *State v. Petree*, 659 P.2d 443, 444 (Utah 1983)).

## REDUCTION OF THE FELONY CHARGE

 Duran's final claim is the trial court erred in refusing to reduce the felony assault charge to a misdemeanor. Duran's challenge is based on the Utah Supreme Court's decision in *State v. Shondel*, 22 Utah 2d 343, 453 P.2d 146 (1969). In *Shondel*, the Court held where two statutes proscribe the same behavior, but impose different penalties, the defendant is entitled to the lesser penalty. *Id.* 453 P.2d at 148. Duran claims Utah Code Ann. §§ 76–5–102.5 and –102.4 proscribe identical conduct. Section 76–5–102.5 provides, with our emphasis, *"any prisoner* who commits assault, intending to cause bodily injury, is guilty of a felony of the third degree." Conversely, § 76–5–102.4 provides, with our emphasis, *"any person* who assaults a peace officer, with knowledge that he is on duty, is guilty of a class A misdemeanor." [7]

The application of *Shondel* is limited to situations where the statutes at issue are "wholly duplicative as to the elements of the crime...." *State v. Bryan*, 709 P.2d 257, 263 (Utah 1985). *Shondel* is not applicable, however, where the statutes apply to different classes of persons. *See State v. Hales*, 652 P.2d 1290, 1293 (Utah 1982). In *Hales*, the Utah Supreme Court refused to reduce a felony conviction of willfully destroying public records by a custodian. The Court noted that the defendant could have been charged under the more general misdemeanor statute of tampering with records, which proscribed such conduct by "any person." *Id.* The Court reasoned that while the conduct prohibited under the

two statutes might be the same, the statutes were distinct because they applied to different people. *Id.*

As in *Hales*, the statutes in this case apply to different classes of persons. Section 76–5–102.5 refers to "any prisoner" whereas § 76–5–102.4 applies to "any person." Moreover, we find "the distinction is manifestly rational." *Hales*, 652 P.2d at 1293. We, therefore, reject Duran's claim that the statutes proscribe identical conduct, and affirm the trial court's refusal to reduce the felony charge to a misdemeanor.

Based on the foregoing, Duran's conviction of assault by a prisoner is affirmed.

BENCH and GREENWOOD, JJ., concur.

---

7. Section 76–5–102.4 was amended, in part, in 1987, but the changes are inapplicable to this case.